UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED G. L., an Individual, | Case No.: 8:18-01543 ADS |
| Plaintiff, | |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | MEMORANDUM OPINION AND ORDER OF REMAND |
| Defendant. | |

## I.    <u>INTRODUCTION</u>

Plaintiff Fred G. L.[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application for a period of disability and disability insurance benefits ("DIB"). For

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

the reasons stated below, the decision of the Commissioner is REVERSED and

REMANDED.

## II.    FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this

appeal.  Prior to filing his application for social security benefits, Plaintiff last worked as

a warehouse worker.  (Administrative Record "AR" 65, 193).  Plaintiff testified that he

has suffered from arteriovenous malformation ("AVM")[3] since he was 12 years old, at

one point causing him to go into a coma.  (AR 51-52, 53).  In the 1990s, when he had full

medical coverage, doctors performed experimental surgeries on him.  (AR 52).  These

relieved some of the headaches "a little bit."  (AR 53).  Doctors thought he was cured,

but his head started pounding one day at work in January 2015.  (AR 51, 54).  He was

hospitalized, and they discovered he still had AVM and that bleeding in his head caused

the pounding.  (AR 51-52, 54).  Plaintiff testified he stopped working because they told

him to do so.  (AR 51). In addition to head pounding, he experiences dizziness, vomiting,

and headaches.  (AR 52).  He has the headaches every day.  (AR 58).  The pain from

them increases when does certain activities, like climbing stairs.  (AR 58).  He has to use

the bathroom three or four times in the morning because he can't push.  (AR 58).  If he

carries a gallon of milk, he has to stop, put it down, and let his heart rate come down.

(AR 59).  He cannot drive.  (AR 61).  Plaintiff used to ride a bike, but he testified he

crashed several times due to dizziness.  (AR 61-62).  If he stands too long, his head will

---

[3] Generally, AVM is an "abnormal tangle of blood vessels connecting arteries and veins, which disrupts normal blood flow and oxygen circulation."  McGiboney v. Corizon, 2019 WL 3048339, at *1 (D. Idaho July 11, 2019) (internal quotation marks and citation omitted).

pound.  (AR 63).  Plaintiff stated he has "acute emergencies" due to his condition about once a week.  (AR 54).

Plaintiff also testified that the only things that have really helped reduce his headaches is medical marijuana, laying down, and sleeping.  (AR 53-54).  He was prescribed OxyContin and Norco, but he stopped taking them because of adverse side effects.  (AR 53-54).  As follow up treatment after he was hospitalized, he received embolizations.[4]  (AR 54).  The embolizations did not shrink his AVM enough, so medical professionals considered scheduling him for the Gamma knife.[5]  (AR 63).  But, because his AVM "is wrapped around [his] optic nerve," they did not administer that procedure because they were concerned it would blind him.  (AR 63).

During the embolizations, medical professionals discovered Plaintiff's hydrocephalus[6] from his "brain not draining" correctly and resulting in swelling that pushes his brain against his skull.  (AR 55).  Plaintiff's doctor recommended surgery and placement of a stent in his head, so Plaintiff scheduled that surgery.  (AR 55).  Although Plaintiff's insurance company initially said it would pay for the procedure, four days before surgery they informed him they would no longer cover it and told him to cancel. (AR 55).  The insurance company explained that he had been out of work for a year, and they no longer were required to insure him.  (AR 55-56).  Plaintiff stated that ever since

---

[4] Embolization procedures are performed "by injecting a substance which blocks the sources of bleeding into the blood stream."  McCord v. Maguire, 873 F.2d 1271, 1272 (9th Cir.), as amended, 885 F.2d 650 (9th Cir. 1989).

[5] The Gamma knife procedure involves providing "intense doses of radiation given to target area(s) while largely sparing the surround tissues."  Silvis v. California Dep't of Corr., 2011 WL 766130, at *9 (E.D. Cal. Feb. 25, 2011).

[6] "Hydrocephalus results from an excessive accumulation of cerebrospinal fluid . . . in the brain, causing abnormal widening of spaces in brain ventricles and potentially harmful pressure on brain tissues."  Howard v. Colvin, 2016 WL 5420558, at *2 (C.D. Cal. Sept. 27, 2016).

then his headaches have grown exponentially.  (AR 55).  He can hear his heart beat in his head due to the swelling.  (AR 55-56, 63).

After his insurance company cancelled his insurance, Plaintiff stated that he obtained Medi-Cal, but the hospital wouldn't take that coverage.  (AR 56).  He is angry that they cancelled his insurance and surgery, but he's also scared that if he has it done they will "mess[] with my head."  (AR 56).  He tried to buy a better insurance plan through Obamacare, but the plan he found charged even more for the procedure, and he couldn't afford it.  (AR 56; see also AR 242).

Plaintiff testified that his headaches and overall condition have stopped him from being able to work and having a normal life.  (AR 63).

## III.  **PROCEEDINGS BELOW**

### A.  **Procedural History**

Plaintiff filed a claim for Title II social security benefits on September 3, 2015, alleging disability beginning January 5, 2015.  (AR 162-63).  Plaintiff's DIB application was denied initially on May 5, 2016 (AR 71), and upon reconsideration on June 30, 2016 (AR 94).  A hearing was held before ALJ Susanne M. Cichanowicz on February 16, 2018.  (AR 43-70).  Plaintiff, represented by counsel, appeared and testified at the hearing, as well as vocational expert Alan Boroskin.  (AR 43-70).

On April 16, 2018, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[7]  (AR 29-36).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for

---

[7] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

review on July 22, 2018.  (AR 1-7).  Plaintiff then filed this action in District Court on August 29, 2018, challenging the ALJ's decision.  [Docket ("Dkt.") No. 1].

On January 28, 2019, Defendant filed an Answer, as well as a copy of the Certified Administrative Record.  [Dkt. Nos. 19, 20].  The parties filed a Joint Submission on April 18, 2019.  [Dkt. No. 22].  The case is ready for decision.[8]

**B.  <u>Summary of ALJ Decision After Hearing</u>**

In the ALJ's decision of April 16, 2018 (AR 29-36), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[9]  20 C.F.R. § 404.1520(a)(4).  At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since January 5, 2015, the alleged onset date.  (AR 31).  At **step two**, the ALJ found that Plaintiff had the following severe impairments: AVM; status-post intraventricular hemorrhage; hydrocephalus; and obesity.  (AR 32).  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

---

[8] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment.  [Dkt. Nos. 7, 12].

[9] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four. Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

404.1520(d), 404.1525 and 404.1526)."  (AR 32).  None of these findings are challenged by Plaintiff.

The ALJ then found that Plaintiff had the following Residual Functional Capacity ("RFC")[10] to:

> [P]erform a reduced range of light work as defined in 20 CFR 404.1567(b) as follows: lift, carry, push, and pull 20 pounds occasionally, 10 pounds frequently; sitting for 6 of an 8[-]hour day, standing and walking for no more than 2 hours out of an 8-hour day; frequent climbing of ramps and stairs, no climbing of ladders, ropes, and scaffolds; frequent balancing, stooping, kneeling; occasionally crouching and crawling; and avoid exposure to hazards such as moving mechanical parts and unprotected heights.

(AR 32).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform his past relevant work as a warehouse worker or warehouse supervisor.  (AR 35).

At **step five**, the ALJ found that, "[c]onsidering the claimant's age, education, work experience and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  (AR 35).  The ALJ accepted the vocational expert's testimony that Plaintiff would be able to perform the representative occupations of: Packaging (Dictionary of Occupational Titles ("DOT") 559.687-014); Document Preparer (DOT 249.587-018); and Assembly (DOT 734.687-018).  (AR 36).  As such, the ALJ found that Plaintiff was "not disabled," as defined in the Social Security Act, at any time from January 5, 2015, through the date of the ALJ's decision.  (AR 36).

---

[10] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  <u>See</u> 20 C.F.R. § 404.1545(a)(1).

-6-

# IV.   ANALYSIS

## A.  Issues on Appeal

Plaintiff raises four issues for review: (1) whether the ALJ properly considered his subjective allegations; (2) whether the ALJ properly considered a borderline-age situation; (3) whether the ALJ properly considered the consultative examiner's opinion; and (4) whether the ALJ properly developed the record.  [Dkt. No. 22 (Joint Stipulation), pp. 2-3].  For the reasons below, the Court agrees with Plaintiff regarding the ALJ's failure to properly consider his subjective allegations, and remands on that ground.

## B.  Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g).  The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied.  Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole,

weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

## C. **The ALJ Failed to Properly Consider Plaintiff's Subjective Complaints**

Plaintiff asserts that the ALJ improperly evaluated his credibility and subjective complaints. Defendant contends that the ALJ appropriately found Plaintiff's testimony not fully supported by the record.

### 1. Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to

support the severity of his pain") (citation omitted)).  Defendant does not contest, and thus appears to concede, that Plaintiff carried his burden of producing objective medical evidence of his impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  <u>Benton</u>, 331 F.3d at 1040; <u>Brown–Hunter v. Colvin</u>, 806 F.3d 487, 489 (9th Cir. 2015) ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); <u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing <u>Light</u>, 119 F.3d at 792).  "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  <u>Id.</u> at 959 (citing <u>Morgan v. Apfel</u>, 169 F.3d 595, 600 (9th Cir. 1999)).

### 2.  <u>The ALJ Failed to Provide Clear and Convincing Reasons Supported by Substantial Evidence</u>

Having carefully reviewed the record, the Court finds that the ALJ failed to articulate specific clear and convincing reasons for discounting Plaintiff's testimony.[11] The ALJ discounted Plaintiff's subjective complaints because he had minimal treatment since July 2015, and because they were not consistent with the objective medical evidence.  (AR 33-34).

Regarding the first reason, the ALJ discussed how Plaintiff had a cerebral angiogram with embolization in July 2015, and then stated "yet there is little evidence of any other treatment or routine follow-up visits."  (AR 33).  Similarly, later in the decision she noted a "lack of recent medical records."  (AR 34).  The ALJ noted Plaintiff's statement that this was "because he lacks insurance coverage to seek treatment."  (AR 33).  The ALJ fails to explain why this reason was insufficient to justify Plaintiff's gap in recent treatment.  The Ninth Circuit has repeatedly warned the agency that the inability to afford treatment (particularly, one assumes, in the circumstance of a person suffering from significant mental and cognitive conditions) is not an appropriate reason to reject a medical opinion.  <u>See</u> <u>Warre v. Comm'r of Soc. Security</u>, 439 F.3d 1001, 1006 (9th Cir. 2006) ("benefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford"); <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996) (holding that it is a "questionable practice" for an ALJ to

---

[11] The ALJ did not make a finding of malingering in her opinion.  (AR 28-36).  Thus, in discounting Plaintiff's subjective complaints, the ALJ was required to articulate specific, clear and convincing reasons.  <u>See</u> <u>Benton</u>, 331 F.3d at 1040; <u>Brown-Hunter</u>, 806 F.3d at 489.

"chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

The Commissioner faults Plaintiff for failing to explain why he did not seek treatment "from clinics or resources for low income persons." [Dkt. No. 22, pp. Jt. Stip. 12-13]. But Plaintiff <u>did</u> seek at least one low-income option, Medi-Cal, only to discover the hospital that was to perform the surgery would not accept Medi-Cal. (AR 56); <u>see Bucholtz v. Belshe</u>, 114 F.3d 923, 924 (9th Cir. 1997) (describing Medicaid as a federal program that provides medical assistance to "low-income persons" and that California participates in the program through Medi-Cal); <u>Cedars-Sinai Med. Ctr. v. Shewry</u>, 137 Cal. App. 4th 964, 969 (2006) ("California's Medi-Cal program implements the federal Medicaid program, which funds medical services for elderly and low-income persons."). Plaintiff also testified that he tried to obtain another plan through Obamacare, but that plan charged even more for his procedure, which he could not afford. (AR 56). Nowhere in the decision does the ALJ discuss Plaintiff's attempts at obtaining other coverage, or otherwise explain what else Plaintiff should have done differently, or that any low-income options were even available for his procedure. Accordingly, the ALJ's reliance on the recent gap in Plaintiff's treatment is neither a clear nor convincing reason for discounting his testimony. <u>See, e.g.</u>, <u>Surman v. Comm'r of Soc. Sec. Admin.</u>, 2018 WL 3491667, at *6 (C.D. Cal. July 19, 2018) (noting there was no indication ALJ considered explanation that low-income options did not provide treatment claimant required); <u>Ramirez v. Colvin</u>, 2013 WL 1752453, at *5 (C.D. Cal. Apr. 22, 2013) (ALJ improperly discounted claimant's testimony based on failure to seek help at county facilities because record did not show claimant "unreasonably failed to avail herself of such resources, and the ALJ made no specific finding that they were even available").

The remaining reason given by the ALJ for discounting Plaintiff's symptoms is also insufficient. On two occasions, the ALJ referenced the same justification for doubting Plaintiff's credibility: the lack of support in the objective medical evidence of record. See AR 33 (finding Plaintiff's statements were "not entirely consistent with the medical evidence"), 34 (allegations of limitations due to headaches "is not supported by the full medical evidence of record"). However, because the ALJ did not provide any other clear and convincing reason for discounting Plaintiff's subjective complaints, reliance on the lack of support in the objective evidence alone is not a sufficient basis for the ALJ's credibility determination. See Burch, 400 F.3d at 681 (lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony); Dschaak v. Astrue, 2011 WL 4498835, at *1 (D. Or. Sept. 27, 2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as erroneous, the ALJ's credibility determination could not rely solely on conflicts with the medical evidence."). Contrary to the Commissioner's assertion, [Dkt. No. 22, pp. 11-12], the ALJ's summary of the medical evidence is not sufficient to support the finding. See Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) (credibility determination insufficient when ALJ "simply state[s] her non-credibility conclusion and then summarize[s] the medical evidence"). Moreover, the Court views the the consultative examiner's "normal" findings (AR 34), mentioned briefly in the credibility determination, as objective evidence.[12]

_____

[12] Even looking to those findings, the Court agrees with Plaintiff that they do not cast doubt on the veracity of his complaints. [Dkt. No. 22, pp. 9-10]. The consultative examiner specifically said that, despite the lack of "focal findings on the examination," Plaintiff had "legitimate complaints of significant headaches associated with his hydrocephalus." (AR 530). Thus, even if the ALJ could rely on these objective findings

Based on the above analysis, this Court concludes the ALJ committed error in discounting Plaintiff's testimony, without a clear and convincing explanation supported by substantial evidence. In this instance, the Court cannot conclude that the ALJ's error was harmless. See, e.g., Brown-Hunter, 806 F.3d at 492-93 (ALJ's failure adequately to specify reasons for discrediting claimant testimony "will usually not be harmless"). In light of the significant functional limitations reflected in Plaintiff's subjective statements, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the [Plaintiff's] testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

### D. The Court Declines to Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); see also Alderman v. Colvin, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's credibility and give appropriate consideration to physician's opinions, step-two findings, and step-five analysis); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."). Because it is unclear, in light of these issues, whether Plaintiff is in fact disabled, remand here is

as the sole reason for discounting Plaintiff's credibility, it is not convincing considering the examiner's conclusion regarding the findings.

on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003). The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

### E. Remand For Further Administrative Proceedings

Remand for further administrative proceedings, rather than an award of benefits, is warranted here because further administrative review could remedy the ALJ's errors. See Brown-Hunter, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). The Court finds that the ALJ failed to properly evaluate Plaintiff's subjective complaints. On remand, the ALJ shall properly review and evaluate Plaintiff's testimony and reassess Plaintiff's RFC. The ALJ shall then proceed through steps four and five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

## V. ORDER

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order. Judgement shall be entered accordingly.


DATE: March 19, 2020


        /s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge